Appellant, Barbara Felton[1] ("Ms. Felton"), appeals the decision of the Wayne County Court of Common Pleas, Juvenile Division, granting appellee, the Wayne County Children Services Board ("WCCSB"), permanent custody of appellant's children. We affirm.
This case involves four of Ms. Felton's children:[2]
Anthony Kisner ("Anthony") who was born on June 17, 1987, Kenneth Kisner ("Kenny") who was born on February 3, 1990, Samantha Felton ("Samantha") who was born on November 3, 1992, and Richard Felton ("Ricky") who was born on September 1, 1993.
Ms. Felton has not been the primary caregiver of these four children for the majority of their lives. In 1989, when Anthony was approximately two years old, Ms. Felton placed Anthony with her father and stepmother because she was feeling overwhelmed. Anthony returned to Ms. Felton's care in May 1990. However, in 1991, Anthony went to live with Ms. Felton's father and stepmother again because Ms. Felton was going through a difficult divorce. Anthony remained in their care until 1997.
At around the same time in 1991, Ms. Felton asked Lida Sartin to care for Kenny, who was approximately one year old, as she felt that Ms. Sartin could provide better care for Kenny while Ms. Felton was going through her divorce. In addition, Samantha who was born in 1992 was placed with Ms. Sartin when she was approximately one year old. In 1993, Ricky was born with serious medical problems and was sent to live with Ms. Sartin when he was about one month old. Kenny, Samantha, and Ricky lived with Ms. Sartin, until her death in February 1997. Ms. Felton testified that she only visited Kenny, Samantha, and Ricky five times while they were in the care of Ms. Sartin.
On February 27, 1997, WCCSB filed a complaint alleging that Anthony was a neglected and dependent child, as his maternal grandparents, who were Anthony's legal custodians, could no longer care for Anthony due to his behavior. On March 21, 1997, Anthony was adjudicated dependent by clear and convincing evidence; however, the court dismissed the neglect allegation. Thereafter, WCCSB was granted temporary custody of Anthony.
On March 27, 1997, WCCSB filed a complaint alleging that Kenny, Samantha, and Ricky were dependent children as their custodian, Lida Sartin, had died on February 12, 1997. On April 24, 1997, Kenny, Samantha, and Ricky were adjudicated dependent, and WCCSB was awarded temporary custody.
After WCCSB obtained temporary custody of the children, WCCSB prepared a case plan for Ms. Felton to complete, in working toward reunification with her children. Generally, the case plan included parenting classes, an individual psychological assessment, an alcohol and drug assessment, counseling, and obtaining appropriate housing. Ms. Felton successfully completed the parenting classes and had a psychological evaluation and an alcohol and drug assessment. She also obtained appropriate housing, but only after significant delay.
Dr. Bowden conducted the psychological evaluation of Ms. Felton and found that she has a history of emotional instability. She was diagnosed with a borderline personality disorder with marked narcissistic and avoidant traits. Borderline personality disorder is a long-standing and chronic condition. "Narcissistic traits indicate that she has tendency to be quite self-centered in the way she deals with her problems." The term "avoidant traits" means that Ms. Felton has difficulty being assertive or difficulty in appropriately dealing with her problems. She was also diagnosed with dysthymic disorder, which is "a long-standing, low-level of depression that tends to be characterized by irritability, lack of motivation, [and] moodiness[.]" Ms. Felton has a history of suicide attempts and was hospitalized twice as an adult for mental problems. The latest suicide attempt occurred after her youngest son, Ricky, was born. Dr. Bowden opined that these disorders would make it very difficult for Ms. Felton to parent children.
Based upon the psychological assessment, it was recommended that Ms. Felton attend counseling. While Ms. Felton attended some of the scheduled counseling sessions, she did miss a substantial number of sessions as well. David Williams, an ongoing caseworker for WCCSB from December 1996 to November 1998, opined that Ms. Felton had made little progress in addressing her mental health issues in counseling.
Ms. Felton was the victim of domestic violence and other abusive relationships throughout her life. She also has had problems with her physical health, including cancer.
The alcohol and drug assessment revealed that Ms. Felton had a history of alcohol abuse. The case plan required Ms. Felton to remain drug and alcohol free. However, Ms. Felton was found guilty of BAC from an incident, which occurred in October 1998. Moreover, Ms. Felton tested positive for marijuana and admitted to smoking it a few days before the drug screen. However, she tested negative on another drug test.
Ms. Felton had visitation, which was generally twice per week for four to five hours per session. Anthony also stayed overnight a couple times per month. While Ms. Felton exercised most of her visitation under the case plan, she canceled some of the visits with the children. Also, Ms. Felton was periodically asleep when the children arrived or generally unprepared for the visit. At the hearing, witnesses testified that the children loved Ms. Felton and looked forward to the visits. However, the children generally were unruly and misbehaved after the visits at Ms. Felton's home. Ricky and Anthony tended to fight after the visits. The children displayed more positive behaviors with their foster parents who provided structure and stability. While Ms. Felton felt that she was ready to care for Kenny and Samantha immediately, she expressed doubts as to whether or not she was ready to parent Anthony and Ricky, who have special needs.
On August 12, 1998, WCCSB filed a motion for permanent custody of Anthony, Kenny, Samantha, and Ricky. A hearing was held on April 13, 1999 and June 2, 1999. Ms. Felton, who was represented by appointed counsel, was present at the hearing and testified. The guardian ad litem recommended granting permanent custody in favor of WCCSB in her report following the hearing. In a judgment entry dated July 2, 1999, the trial court granted WCCSB's motions for permanent custody, finding by clear and convincing evidence that Ms. Felton suffers from a chronic mental illness which makes her unable to provide an adequate permanent home for the children. The trial court further concluded that it was in the best interests of the children to grant WCCSB's motions for permanent custody in order to free the children for a legally secure future. This appeal followed.
Ms. Felton asserts two assignments of error. We will consolidate them to facilitate review.
First Assignment of Error
 The trial court erred in terminating Appellant's parental rights because the court's finding that Barbara Felton suffered from chronic mental illness is against the manifest weight of the evidence.
Second Assignment of Error
 The trial court erred in terminating Barbara Felton's parental rights as its finding that terminating the parent-child relationship was in the children's best interest was against the manifest weight of the evidence.
 First, Ms. Felton asserts that the trial court's finding that Ms. Felton suffered from a chronic mental illness is against the manifest weight of the evidence. Further, Ms. Felton argues in her second assignment of error that the trial court's finding that it was in the best interests of the children to terminate the parent-child relationship and grant permanent custody to WCCSB is against the manifest weight of the evidence. We disagree.
When the manifest weight of the evidence is challenged, "[a]n appellate court conducts the same manifest weight analysis in both criminal and civil cases." Ray v. Vansickle (Oct. 14, 1998), Lorain App. Nos. 97CA006897/97CA006907, unreported, at 3.
 "The [reviewing] court * * * weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered."
 State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v. Martin (1983), 20 Ohio App.3d 172, 175. Moreover, "[e]very reasonable presumption must be made in favor of the judgment and the findings of facts [of the trial court]." Karches v. Cincinnati (1988), 38 Ohio St.3d 12, 19. Furthermore, "if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." Id.
"Termination of parental rights is sanctioned when necessary for the welfare of a child, but is an `alternative of last resort.'" (Citation omitted.) In re Thorn (Feb. 16, 2000), Summit App. No. 19597, unreported, at 7. The termination of parental rights, when the child is neither orphaned or abandoned, is governed by R.C. 2151.414(B),[3] which states in relevant part:
 The court may grant permanent custody of a child to a movant if the court determines * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (1) The child is not abandoned or orphaned and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents[.]
 R.C. 2151.414(B) creates a two-prong test, requiring the court to find by clear and convincing evidence that (1) the child cannot be placed with either parent within a reasonable amount of time or should not be placed with the parents, based on an analysis under R.C. 2151.414(E), and (2) granting permanent custody to the agency is in the best interest of the child, based on an analysis under R.C. 2151.414(D). In re Culver (June 23, 1999), Summit App. No. 19285, unreported at 4.
We will first discuss whether Ms. Felton's children could not have been placed with her within a reasonable amount of time or should not be placed with her. In making this determination, the trial court must find by clear and convincing evidence that at least one of the enumerated factors in R.C. 2151.414(E) exists.In re William S. (1996), 75 Ohio St.3d 95, 101. In the case at bar, the juvenile court primarily based its decision on the following factor under R.C. 2151.414(E):
 (2) Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year[.]
 When a juvenile court finds by clear and convincing evidence that one of the enumerated factors in R.C. 2151.414(E) is present, the court must then conclude that the child cannot be placed with the parent within a reasonable time or should not be placed with the parent. In re Thorn, supra, at 8.
The court below found that Ms. Felton's personality disorder was such that she was unable to provide an adequate permanent home for her children now or within one year. Ms. Felton was diagnosed with a long-standing and chronic condition, namely, a borderline personality disorder with marked narcissistic and avoidant traits. This condition is characterized by mood swings and the tendency to deal with problems in a self-centered manner. She was also diagnosed as having dysthymic disorder, which is basically a low-level depression. She admitted to making two suicide attempts as an adult, with the most recent and most serious occurring after the birth of her youngest child. Dr. Bowden testified that it would be very difficult for Ms. Felton to parent children due to these disorders and that she would have to make significant changes to improve her parenting skills. However, over the two years that the case plan has been in effect, Ms. Felton had made little or no progress toward addressing her mental health issues, according to Mr. Williams, a caseworker for WCCSB. She sporadically attended counseling, missing a substantial number of her scheduled appointments. Moreover, her commitment to making positive changes in her lifestyle is questionable as she tested positive for marijuana in a drug screen and was convicted of driving while having a blood alcohol content above the legal limit, despite being required by the case plan to remain drug and alcohol free. After carefully reviewing the record, we cannot say that the juvenile court clearly lost its way and created a manifest miscarriage of justice by finding that Ms. Felton suffered from a chronic mental or emotional illness that makes her unable to provide an adequate and permanent home for her children.
We now turn to the issue of whether granting permanent custody is in the children's best interest. In determining the best interest of a child, R.C. 2151.414(D) requires the court to consider all relevant factors. These factors include, but are not limited to, the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 The evidence adduced at the hearing supports the juvenile court's determination that granting WCCSB permanent custody of the children is in their best interest. As to the first factor, the evidence showed that the children interacted well with one another and had some bond with their mother, but the children also had positive experiences and bonded with their foster families. Although the children looked forward to visiting Ms. Felton and were disappointed when the visits were cancelled, the evidence showed that the children were in part negatively affected by the visits, as they tended to have temper tantrums, fight with one another, and misbehave in school after the visits. Further, the children's wishes as expressed through their guardian ad litem were for WCCSB to be granted permanent custody.
As to the third factor, Ms. Felton was not the primary caregiver or custodian for most of her children's lives. When Anthony was two years old, he was sent to live with his grandparents because Ms. Felton was going through a difficult divorce. However, although the divorce occurred in approximately 1991, he remained in his grandparents' care until 1997. Similarly Kenny, Samantha, and Ricky lived with Lida Sartin since they were infants — Kenny and Samantha were both approximately one year old and Ricky was about one month old. The children remained with Ms. Sartin until her death in 1997. Ms. Felton testified that she only visited her children approximately five times during the years when they were in Ms. Sartin's care. Furthermore, Ms. Felton only began having regular contact with her children, after WCCSB obtained temporary custody, and even then, she still failed to exercise all of the visitation made available to her.
Regarding the fourth factor, the record demonstrated that the children's needs include structure and stability in the home and that no other legally secure permanent place could be found other than with the agency. After thoroughly reviewing the record, we conclude that the trial court did not commit a manifest miscarriage of justice in finding that granting WCCSB permanent custody was in the best interest of the children. Accordingly, Ms. Felton's first and second assignments of error are overruled.
Ms. Felton's assignments of error are overruled. The decision of the Wayne County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Wayne, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to Appellant.
Exceptions.
 ___________________________________ WILLIAM G. BATCHELDER FOR THE COURT
BAIRD, J. and CARR, J. CONCUR
[1] After getting divorced from Richard Felton, Barbara changed her surname back to Nicholas, which was her maiden name.
[2] Ms. Felton has a fifth child who is approximately eleven years old and lives in West Virginia with his aunt and uncle.
[3] R.C. 2151.414 was amended on March 18, 1999; however, we must apply the former version of R.C. 2151.414, as WCCSB filed its motion for permanent custody before the effective date of the amendments. In re Thorn, supra, at 7 fn. 2.